IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOYCE LATTIN,                                Civil No. 05-6152-AA
                                             OPINION AND ORDER
        Plaintiff,

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

Kathryn Tassinari
Mark Manning
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Neil Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Johanna Vanderlee
Special Assistant U.S. Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

    Claimant, Joyce Lattin, brings this action pursuant to the

1   - OPINION AND ORDER

Social Security Act (the Act), 42 U.S.C. §§ 405(g),1383(c)(3), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. Id. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed her application for DIB and SSI benefits on March 7, 2002. She alleged an inability to work beginning June 28, 1992, due to lupus, fibromyalgia, arthritis, diabetes mellitus, and kidney problems. Tr. 45-46, 56. Her date last insured was December 31, 1997. Tr. 13. A claimant seeking disability insurance benefits must establish that she was disabled on or before her date last insured. See 20 C.F.R. §§ 404.131, 404.315-21. Plaintiff must prove that she was disabled on or before December 31, 1997, in order to be eligible for DIB under Title II.

In September 2002, plaintiff's applications were denied initially, tr. 25-29, and in March 2002, upon reconsideration. Tr. 31-33. On February 16, 2005, after a hearing, the Administrative Law Judge (ALJ) ruled that plaintiff was not disabled. Tr. 10-20. The Appeals Council, denied plaintiff's request for review. Tr. 4-7. The ALJ's decision thus became the final agency decision. See 20 C.F.R. §§ 404.981, 416.1481, 422.210 (2005). On May 19, 2005, plaintiff filed the complaint at bar.

2   - OPINION AND ORDER

**STATEMENT OF THE FACTS**

Born in 1951, plaintiff was 40 years old on the alleged disability onset date of October 10, 1992, and 52 years old at the time of the hearing. Tr. 46, 10-20. Plaintiff graduated from high school, and has past work experience as a clerk, video store manager, and sales representative. Tr. 95, 103.

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v.

3   - OPINION AND ORDER

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

Based on the 5-Step Sequential Process outlined above, the ALJ found at Step One that plaintiff was not engaged in "substantial gainful activity" since her alleged onset date of disability. Tr. 19. At Step Two, the ALJ found that plaintiff had the following "severe" impairments: obesity, non-insulin dependent diabetes mellitus, and systemic lupus erythematosis. Id. Findings by the ALJ at Steps One and Two are not in dispute.

At Step Three, the ALJ found that these medically determinable impairments did not meet or equal one of the listed impairments. This Finding is in dispute. The ALJ next determined the plaintiff's residual functional capacity. See 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The ALJ determined that plaintiff could perform light work, that she could stand or walk for four to six hours in an eight hour work day, that she should never climb ladders, ropes, or scaffolds or work at heights or around dangerous machinery, and that she could occasionally climb stairs or ramps, stoop, crouch, crawl, or kneel. Tr. 20. This determination is in dispute.

At Step Four, the ALJ found that plaintiff was able to perform her past relevant work as a video store manager, cashier, and sales representative. Tr. 20. This Finding is also in dispute. Finally, at Step Five, because the ALJ found that plaintiff could perform her past relevant work at Step Four, he did not consider whether plaintiff could perform other work existing in significant numbers in the national economy.

Plaintiff argues that the ALJ erred when he: (1) failed to give clear and convincing reasons for rejecting the September

5 - OPINION AND ORDER

2004 disability opinion of Dr. Muller, plaintiff's treating physician; and (2) rejected plaintiff's testimony as not credible.

1. Opinion of Dr. Muller

Plaintiff saw Dr. Muller beginning February 1992, and again in January and March 1993. In March 1993, Dr. Muller opined that plaintiff had done "quite well" after a course of physical therapy, that her pedal edema was "resolved," that her shoulder had just a "little bit of tenderness," and that her neck had only "a little bit of decrease in range of motion." Tr. 304. Finally, Dr. Muller recommended that plaintiff swim to increase her range of motion, control her weight, decrease her blood pressure, and improve her physical conditioning. Id.

Plaintiff did not see Dr. Muller again for any impairment-related problem for three years, until May 1996, when he stated that her weight was 216 pounds, she had no sign of significant rheumatoid disease, and she had multiple tender points on her back and shoulder. Tr. 302. Dr. Muller diagnosed possible fibromyalgia, bloating, abdominal pain, hair loss, and sinus congestion. Id. Dr. Muller then treated plaintiff for gout in one of her right toes in October 1996, but x-rays showed no other foot abnormalities. Tr. 301.

Dr. Muller next treated plaintiff in January 1998, when she reported "she now no longer has any swelling" and "felt marvelous." Tr. 301. In June 1998, Dr. Muller diagnosed plaintiff with hypertension. Tr. 300. In September 1998, plaintiff reported that edema occurred "quite rarely" and Dr. Muller opined that "her joints seem to be much improved with the

6   - OPINION AND ORDER

use of prednisone." Id. In December 1998, Dr. Muller diagnosed plaintiff with lupus with kidney, joint, and eye manifestations, and prescribed Plaquenil. Tr. 298.

In January 1999, Dr. Muller opined that plaintiff was "doing pretty well," had no recent eye irritations, and that her joints, except for her right shoulder, felt better. Tr. 297. Later in January 1999, plaintiff reported right foot pain and left eye "floaters" and right eye dilation. Tr. 297. In March 1999, plaintiff reported that a right shoulder steroid injection "instantly" helped and Dr. Muller stated that "now she is able to lift things and do exercises without any difficulties." Tr. 296. Dr. Muller stated that Plaquenil "has really helped a lot with her functionality" and that despite the lupus, her joints were "okay." Id.

In May 1999, Dr. Muller diagnosed plaintiff with benign positional vertigo and stated that her diabetes and hypertension were stable. Tr. 299. In June 1999, Dr. Muller opined that "she has not been having any significant problem" from lupus. Tr. 296. In September 1999, plaintiff reported she had more energy and a better attitude. Id. Dr. Muller stated that plaintiff's glucose levels were stable, she had no joint swelling, no vision problems, and that she had improved after she exercised more and dieted. Id.

Plaintiff was not treated by Dr. Muller in 2001. In March 2002, plaintiff's cervical x-ray showed "straightening of the normal curvature consistent with spasm," but no acute fractures or dislocations. Tr. 394. In April 2002, Dr. Muller opined that plaintiff's hypertension and diabetes were largely stable, but

7   - OPINION AND ORDER

she reported feeling depressed and feeling "crumby" as a result of lupus. Tr. 248. In June 2002, a kidney ultrasound showed "mild" pyelocaliectasis (dilation of the calices, usually due to obstruction or infection). In August 2002, plaintiff reported right upper quadrant pain, but a colonoscopy showed no significant problems. Tr. 278. Again in August 2002, based on plaintiff's reported right Achilles tendon pain, Dr. Muller diagnosed her with tendonitis, but opined that her lupus was "reasonably well controlled." Tr. 245. In February 2003, plaintiff reported that she had no visual difficulty when driving and no night vision problems, but she reported difficulty reading. Tr. 233.

In February 2003, orthopedist Dr. Hobson, examined plaintiff, who weighed 240 pounds and was in no apparent distress. Tr. 261. He opined that her upper and lower extremities were normal with the exception that her right ankle had "some swelling," although her right foot had "good motor and sensory function." Id. Dr. Hobson interpreted plaintiff's right foot x-rays to show Achilles tendonitis, recommended a right foot walker with a heel lift, and planned for her to begin physical therapy in six weeks. Id.

In April 2003, Dr. Muller opined that plaintiff was doing "reasonably well" with diabetes, had "okay" vision, and that her right Achilles tendon was "somewhat stiff," but noted that she did ankle range of motion exercises. Tr. 276. In June 2003, plaintiff's blood sugars were "running excellently," and she was "doing better" on collagen hydrolysate, but she reported heel pain consistent with plantar fascia irritation. Tr. 274. In

8 - OPINION AND ORDER

September 2003, Dr. Muller opined that plaintiff's lupus and diabetes were "doing reasonably well" and plaintiff reported no right foot problems. Tr. 271. In November 2003, Dr. Muller opined that plaintiff's hypertension was "stable" and stated that her pain and tenderness from lupus decreased with use of indocin. Tr. 268.

Plaintiff submitted no further records from Dr. Muller, and presumably did not see him after November 2003. In September 2004, however, Dr. Muller completed a form at the request of plaintiff's counsel which stated as follows:

> 1. What are the diagnoses?
> Systemic lupus Erythematosis
> NIDDM [non-insulin dependent diabetes mellitus]
> HTN [hypertension]
>
> 2. What are the objective medical findings upon which the diagnoses are based?
> Physical Exam
> Laboratory values
> Consultation
>
> 3. What are the symptoms?
> Arthralgia
> Fatigue
> Joint swelling
>
> 4. Are the conditions capable of causing these symptoms?
> Yes
>
> 5. In your opinion, based upon the above definition [of sedentary and light work], is [plaintiff] capable of light work?
> No.
> Lifting is okay, but walking is not possible due to joint swelling, pain, and decreased mobility.
>
> 6. If, in your opinion, [plaintiff] is not capable of light work, would she be capable of a full range of sedentary work?
> No.
> I feel she could not even do 2 hrs. of walking/standing in a shift.
>
> ///

9 - OPINION AND ORDER

7. Is [plaintiff] unable to sustain work activity
        on a full-time basis in either the sedentary or
        light work categories due to the exacerbation of
        her medical condition?
        [Yes,] Unable to sustain either sedentary or light work.

Tr. 406-07.

The ALJ must provide specific and legitimate reasons to reject a treating physician's contradicted opinion of disability, and clear and convincing reasons for rejecting uncontradicted treating physician's opinions. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ rejected Dr. Muller's September 2004, disability assessment because he found "no documentation of any medication treatment other than January 2004 chemical panels, since November 2003." Tr. 17. Further, the ALJ found that pursuant to Dr. Muller's September 2, 2003, report, "plaintiff presented with 'no particular problems' as her hypertension, lupus, and diabetes were all seen as being controlled 'reasonably well.'" Id. The ALJ noted that during Dr. Muller's August and September, 2003 examinations/reports, plaintiff's "hypertension, blood sugars, and even weight were all seen to be 'running excellently[.]'" The ALJ accorded Dr. Muller's opinion that plaintiff would be precluded from walking or standing even 2 hours, and unable to perform even sedentary work, "less weight as they lack durational support of objective signs and laboratory findings, even within the treatment notes and reports of that same physician." Id.

The ALJ rejected Dr. Muller's 2004 disability opinion because: (1) plaintiff received no medical treatment after November 2003; (2) Dr. Muller's last examination of plaintiff was benign; and (3) Dr. Muller's opinion that plaintiff could not

10   - OPINION AND ORDER

stand or walk for even two hours a day was unsupported by his own treatment record. Tr. 14-18. During plaintiff's last two physical examinations, neither Dr. Muller nor plaintiff mentioned any difficulty in her ability to stand or walk. Tr. 17, 18, 268, 271. In September 2003, plaintiff's extremities were "without cyanosis, her lupus, hypertension, and diabetes were all non-problematic, and Dr. Muller planned "[j]ust reassurance" and to "[c]ontinue all medications." Tr. 271.

Essentially, after plaintiff's application for benefits was denied, and without ever re-examining plaintiff, Dr. Muller responded to plaintiff's attorney that plaintiff was unable to perform even sedentary work. Tr. 406-07. An opinion solicited after an individual is found not disabled is not persuasive, particularly when it is inconsistent with earlier statements. Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).

Further, the ALJ relied on Dr. Hobson's February 2003, orthopedic examination which contradicted Dr. Muller's disability opinion. Tr. 18. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5)("we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality[.]"). Plaintiff told Dr. Hobson that she did not ice her foot, had not done physical therapy, and did not wear a brace and that heat, elevation and rest improved the right heel pain. Tr. 260. Dr. Hobson, an orthopedic specialist, opined that plaintiff's lower extremities had normal alignment, range of motion, strength, and stability, except that she had "some swelling" of her right ankle and that her right Achilles tendon was tender. Tr. 261. Dr. Hobson diagnosed plaintiff with

11   - OPINION AND ORDER

tendonitis, which he treated "in the acute phase" with a foot walker and icing. Id. Dr. Hobson recommended that plaintiff begin physical therapy in about six weeks. Id. An examining doctor's opinion constitutes substantial evidence in support of an ALJ's decision. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ also partially relied on opinions from Drs. Kehrli and Eder, non-examining physicians who opined that plaintiff could perform light work with some limitations. Tr. 18, 235-38. A non-examining physician's opinion may amount to substantial evidence as long as other evidence in the record supports those findings. Tonapetyan, 242 F.3d at 1149. The ALJ actually found that plaintiff's residual functional capacity was more limited than Drs. Kahrli and Eder assessed. The ALJ also limited plaintiff from working around hazards, climbing ladders, ropes or scaffolds, and from working at heights. Tr. 20.

In conclusion I find that the ALJ rejected Dr. Muller's opinion because it was inconsistent with other evidence; and it was not well supported by medically acceptable clinical and/or laboratory diagnostic studies. Tr. 14-18. The ALJ adequately analyzed the evaluations and other opinion evidence that contradicted Dr. Muller's opinion. Id. The ALJ then provided specific and legitimate reasons to reject Dr. Muller's disability opinion. Tr. 17-18.

2. Plaintiff's Testimony

The ALJ found that plaintiff was not totally credible. Tr. 17-18. In assessing a plaintiff's credibility, an ALJ may consider: (1) ordinary techniques of credibility evaluation, such

12   - OPINION AND ORDER

as prior inconsistent statements concerning the symptoms and testimony by the plaintiff that appears less than candid; (2) unexplained failure to seek treatment; (3) daily activities; and (4) medical evidence which discounts the severity of subjective claims. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

Specifically, an ALJ may discredit a plaintiff's subjective complaints by identifying inconsistencies between her complaints and activities of daily living. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). In discrediting plaintiff's subjective complaints, the ALJ noted that plaintiff here engaged in cooking, shopping, housekeeping, laundry, self-grooming activities, reading, watching TV, computer/internet activities 30 - 120 minutes at a time, exercise on her stationary bike three times per week, gardening 1 - 1 ½ hours at a time, and driving. Tr. 18. Plaintiff reported that her chores were done "very well," and that she cared for her pet "adequately." Id., tr. 80-81, 88-90, 443, 448-49. The ALJ found plaintiff's reported activities of daily living inconsistent with disability and therefore the ALJ properly discredited plaintiff's subjective complaints.

An ALJ may also consider a lack of supporting objective medical evidence as a factor in discrediting a plaintiff's subjective complaints. Thomas, 278 F.3d at 958-59. The ALJ summarized the medical evidence and noted that plaintiff had "no documentation of any medication treatment other than January 2004 chemical panels, since November 2003." Tr. 17. The ALJ also found that plaintiff "presented with 'no particular problems' as

13   - OPINION AND ORDER

her hypertension, lupus, and diabetes were all seen as being controlled 'reasonably well.'" Tr. 17, 271. Finally, the ALJ noted that plaintiff did not report Achilles tendon problems after April 2003. Tr. 17.

Despite the fact that plaintiff selected June 1992 as her alleged disability onset date, the ALJ noted that this was "apparently based on surgical procedures" performed at that time and that thereafter, she recovered and continued to drive and engage in a wide range of daily activities. Tr. 17-18. It was not until plaintiff had been denied disability benefits that her treating physician completed plaintiff's attorney's form and stated that she could not perform even sedentary work. Tr. 406-07. The ALJ conducted an extensive review of the record and found that the examining, treating and reviewing sources through 2003 did not opine that plaintiff was disabled, or support that level of disability. The lack of objective medical evidence, as noted by the ALJ here, to find that plaintiff's subjective complaints were not totally credible is one appropriate factor, among others, in the credibility analysis. The ALJ's finding that plaintiff was not totally credible was supported by the lack of objective medical evidence and by the inconsistencies between her complaints and her activities of daily living.

///
///
///
///
///
///

14   - OPINION AND ORDER

**CONCLUSION**

The Commissioner's decision is based on substantial evidence, and is therefore, affirmed. This case is dismissed. IT IS SO ORDERED.

Dated this  21  day of February 2006.


                                      /s/ Ann Aiken
                                        Ann Aiken
                                United States District Judge

15   - OPINION AND ORDER